The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE PLAINTIFF FIRM, a Washington sole proprietorship,<br><br>  Plaintiff,<br><br>  v.<br><br>CHAMELEON DATA CORPORATION, a Washington corporation; and DEREK S. DOHN, an individual,<br><br>  Defendants. | No. CV6 337 TSZ<br><br>DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT |

## INTRODUCTION

Plaintiff's opposition confirms that, having obtained the injunctive relief enabling her to access to her e-mail on March 3, 2006, she is proceeding with this litigation without any actual damages. If her primary concern is really the confidentiality of documentation in defendants' possession (she presents no evidence that Chameleon or Dohn has ever breached any confidentiality obligations), as she contends in several footnotes and in her declaration, one would think she would have made some attempt to retrieve them by now. Even assuming that her late "disclosure" of damages information is proper (it is not), what she has submitted after defendants filed this motion confirms that she has suffered no actual, compensable damages or injury. And interpreting the facts in the light most favorable to her, even taking into account the inadmissible hearsay material that she submits in support of her opposition,

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

defendants' action to collect on amounts claimed to be due and owing by plaintiff for expenses and services rendered is not cybersquatting, and does not implicate the ACPA, as a matter of law. Summary judgment dismissing her claims is appropriate.

## REPLY ARGUMENT

### I. PLAINTIFF'S LATE DISCLOSURE, WHICH SHOULD BE STRICKEN, ESTABLSHES THAT SHE HAS SUFFERED NO ACTUAL DAMAGES OR INJURY.

A. <u>Motion to Strike Plaintiff's Supplemental Damages Disclosure</u>.

Defendants move to strike the "Confidential Supplemental Information Re Plaintiff's Damages," dated September 29, 2006, and attached as Exhibit A to plaintiff's declaration (Dkt. #32). Plaintiff's initial disclosures were due on June 2, 2006. Dkt. #11. As set forth in defendants' opening brief, there is no dispute that plaintiff did not include a damages computation in her initial disclosures as required by Rule 26(a)(1)(C), notwithstanding her assertions that she had incurred "substantial damage" based on defendants' conduct. Dkt. #23, Exh. B, at 5, 6. Only after the filing of this Motion for Summary Judgment, 17 weeks after the Court's deadline for making initial disclosures, did plaintiff supplement her disclosure. Dkt. #32-2, Exh. A.

Rule 37(c)(1) provides for automatic exclusion of evidence a party seeks to use in connection with a motion that has not been disclosed as required under the initial disclosure rules. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (stating that this subsection is "a recognized broadening of the sanctioning power," and citing the 1993 Advisory Committee notes for the proposition that the evidence exclusion sanction is "self-executing" and "automatic"); *see also Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003) (citing the 1993 advisory committee note for the proposition that "the 'automatic sanction' of exclusion 'provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence'").

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 2
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

Because plaintiff unilaterally waited four months to comply with the requirement to disclose damages computations, the evidence of damages she submits in response to the summary judgment motion should be stricken.

Plaintiff's assertion on page 20 of her brief that defendants' counsel failed to press the issue is disingenuous to say the least. In a letter dated June 9, 2006, one week after plaintiff filed her initial disclosure, defendants' counsel pointed out the inadequacy of the disclosure and also requested to review damages documentation required to be produced "as under Rule 34." Dkt. #23, Gandara Dec., Exh. C, at 2. The letter emphasized that failing to comply with the initial disclosure requirements results in sanctions under Rule 37(c)(1), and noted that the failure to include the damages calculations would preclude her "from offering it at trial or in response to a summary judgment motion." Dkt. #23, Exh. C, at 2. Having received no response to the June 9th letter, counsel followed up with another letter on July 24th. Dkt. #23, Gandara Dec., Exh. D. Still no response. Dkt. #23, Gandara Dec., ¶4. On September 29, 2006, <u>after</u> defendants brought their Motion for Summary Judgment and 16 weeks after the first letter from defendants' counsel, plaintiff finally produced a damages computation of any sort. These hide-the-ball and lay-in-the-weeds tactics are precisely what the initial disclosure rule was designed to prevent.[1]

Plaintiff also asserts on pages 10 and 21 that defendants should be faulted for not deposing Ms. Christensen earlier regarding damages issues. What plaintiff fails to mention is that defendants' counsel <u>accepted</u> plaintiff's proposal for an early deposition, on the condition that plaintiff provide damages information before the deposition; that information would have been required days later by the initial disclosures in any event. Second Gandara Dec., ¶1. Defendants have consistently asserted in this lawsuit that plaintiff was not actually harmed by

---

[1] Plaintiff's supplemental disclosure (Dkt. #32-2, Exh. A, at 2) also withholds detailed information about the time entries based on privilege and work product, notwithstanding that these confidentiality protections are waived by the affirmative use of protected material. See *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). Nor did plaintiff provide a privilege log as required by Rule 26(b)(5).

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

defendants' alleged conduct, and defendants did not want to waste time and resources taking her deposition without having the information necessary to confirm that she had incurred no damages. *See* Second Gandara Dec., ¶1. It was plaintiff who refused to agree to a reasonable request for damages information, as she has done from the beginning of this litigation.[2]

Finally, plaintiff has not met her burden to show that late disclosure was either justified or harmless. *See Yeti by Molly,* 259 F.3d at 1106, 1107. She was not justified in omitting a damages computation from her initial disclosure, especially in light of the fact that over 80% of the time for which she now seeks compensation had been incurred prior to the June 2nd deadline for initial disclosures. Dkt. #32-2, Exh. A, at 10-13. This information was within her knowledge at the time initial disclosures were made, but was withheld from defendants. And the fact that a computation was finally disclosed three weeks after the deadline for discovery motions and a week-and-a-half before the discovery cutoff (Dkt. #16, at 1) was harmful to defendants, especially in light of the policy set forth in the Court's 4/3/06 Order Regarding Initial Disclosures, Joint Status Report & Early Settlement strongly encouraging the early use of ADR,[3] and in the Court's 6/2/06 Minute Order Scheduling Case for Mediation stating that "[t]he parties are strongly encouraged to mediate prior to completion of discovery." Dkt. #11, at 3; Dkt. #16, at 3 (emphasis added); *see also Wong v. Regents of the Univ. of Cal.,* 410 F.3d 1052, 1062 (9th Cir. 2005) (finding that late disclosure of witnesses was not harmless or substantially justified, noting that courts set schedules "to permit the court and the parties to deal with cases in a thorough and orderly manner").

---

[2] Plaintiff states on page 10 of her response brief and in her supplemental disclosure that defendants were put on notice of her damages amount based on a footnote buried in a letter she wrote to Mr. Dohn on March 10, 2006, while he was in the process of retaining a new lawyer. Dkt. #32-2, at 2-3, 8. This footnote does not contain a damages computation. Rather, it was added on to a discussion of conflicts of interest concerns she had for potential lawyers defendants might retain, and states in "posturing" language that Mr. Dohn had turned what appeared to be a $9,000 dispute "into what is – to date – at least [a] $40,000 dispute (your invoice, my time over two weeks, and my counsel's charges)." And, in any event, the footnote was not referenced by her as a source of damages information at all until the supplemental disclosure on September 29, 2006.

[3] "The steps required by this Order [including the initial disclosure deadline] are meant to help achieve [the goal of early settlement] while preserving the rights of all parties." Dkt. #11, at 3.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

"A party may not free itself of the burden to fully comply with the rules of discovery by attempting to place a heretofore unrecognized duty of repeated requests for information on its adversary." *Arthur v. Atkinson Freight Lines Corp.,* 164 F.R.D. 19, 20 (S.D.N.Y. 1995). The damages disclosure attached to plaintiff's declaration should be stricken. As an additional sanction, defendants request attorney's fees in connection with bringing this motion to strike, pursuant to Rule 37(c)(1) and this Court's original scheduling order (Dkt. #11, at 3). If stricken, plaintiff has presented no evidence of actual damages, and claims requiring proof of them should be dismissed.

B. Plaintiff's Damages Disclosure Conclusively Establishes That She Has Incurred No Actual, Compensable Damages.

The damages plaintiff seeks in the supplemental disclosure are not recoverable in any event. Plaintiff has a lawyer of record,[4] and will presumably seek to recover attorney's fees if she prevails under applicable statutes. She claims that the value of her own time in pursuing this case, and that of her associate, is recoverable as actual damages in this action. She is wrong as a matter of law.

Under Washington law, absent statutory or contractual authority, attorney's fees and expenses of litigation (other than recoverable costs) are not generally recoverable in a civil action. *See, e.g., Anderson v. Gold Seal Vineyards, Inc.,* 81 Wn.2d 863, 869, 505 P.2d 790 (1973). There are exceptions, and for certain claims and equitable theories, attorney's fees are recoverable as damages. *See City of Seattle v. McCready,* 131 Wn.2d 266, 275 & n.6, 931 P.2d 136 (1997). But plaintiff is not pursuing any such claims or theories, and the "damages" plaintiff discloses are her purported lost revenues or opportunity costs, not recoverable "attorney's fees." There is no legal basis for recovering them. In addition, plaintiff has made

---

[4] There is Washington appellate case law suggesting that lawyers appearing pro se may recover attorney's fees under a contract, statute, or court rule. *See Leen v. Demopolis,* 62 Wn. App. 473, 486-87, 815 P.2d 269 (1991), *rev. denied,* 118 Wn.2d 1022 (1992). But plaintiff has a lawyer; she has not appeared in this action pro se. Moreover, the U.S. Supreme Court has held that pro se lawyers cannot recover attorney's fees under federal statutes. *See Kay v. Ehler,* 499 U.S. 432 (1991).

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 5
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

no showing that these purported gross earnings were actually "lost,"[5] nor can she establish any entitlement to the value of time incurred by the associate lawyer in her sole proprietorship practice. In short, what plaintiff has submitted provides no information about compensable damages.

She argues on page 17-18 of her brief that proof of actual monetary damages is not required to support the "injury to a trade or business" prong of a Washington Consumer Protection Act claim.[6] But she has alleged in her Complaint that defendants' conduct in violation of the CPA "caused Plaintiff substantial damage." Dkt. #1, Exh. A, ¶30. Also, as the Washington Court of Appeals noted in a case she cites, "mere involvement in having to defend against [a party's] collection action and having to prosecute a CPA counterclaim is insufficient to show injury to her business or property." *Sign-O-Lite Signs, Inc. v. Delaurenti Florists, Inc.*, 64 Wn. App. 553, 564, 825 P.2d 714, *rev. denied*, 120 Wn.2d 1002 (1992); *see also Demopolis v. Galvin*, 57 Wn. App. 47, 54, 786 P.2d 804, *rev. denied*, 115 Wn.2d 1006 (1990) (having to bring suit to protect against a lenders' foreclosure action is insufficient to satisfy the injury element of a private CPA claim); *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 316, 858 P.2d 1054 (1993) (in connection with the "injury" prong of a CPA claim, implicitly approving of a trial court's ruling that a party's litigation expenses, including time lost due to attendance at depositions, preparation for trial, and at trial, were not recoverable). In this purely private dispute, plaintiff has not alleged that she has suffered any harm other than the lost value of time as set forth in her supplemental disclosure, which is insufficient to constitute "injury" under the statute. Plaintiff has incurred no actual damages or injury as a matter of law.

---

[5] In the June 9, 2006 letter, defendants' counsel requested production of damages documents to support plaintiff's "lost earnings" claim, "including time entries, financial statement information, and tax return documentation. Dkt. #23, Gandara Dec., Exh. C. As noted *supra*, plaintiff didn't respond until September 29th, and then "produced" only time charts and the March 10th letter that mentioned damages vaguely in a footnote.

[6] Her contention at footnote 14, page 19, that conversion does not require proof of actual damages is belied by the cases she cites, which specify the measure of actual damages for conversion claims under Washington law.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 6
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

## II. PLAINTIFF'S ACPA CLAIM FAILS AS A MATTER OF LAW.

### A. Motion to Strike Inadmissible Hearsay.

Defendants move to strike the following inadmissible hearsay from plaintiff's response pleadings: (1) Exhibits 1 and 11 to the Declaration of Michael A. Moore (Dkt. #31), ¶9 of the Declaration of Colleen A. Christensen (Dkt. #32-1), citing Exhibit 11, including references to these documents and testimony on pages 1 (lines 11-24), 2 (lines 1-7), 6 (lines 3-8, 11-16), 12 (lines 13-20), and 15 (lines 14-17 & fn. 11) of plaintiff's response brief; and (2) the first two sentences of ¶40 of the Declaration of Colleen A. Christensen (Dkt. #32-1), including the reference to this testimony on page 4 (lines 22-23) of plaintiff's response brief.[7]

All of these materials are offered by plaintiff in connection with the summary judgment motion to prove the truth of the matters asserted, and are therefore hearsay. For example, Exhibit 1 is offered by plaintiff to show that the alleged statements therein were "Chameleon DATA's telephone instruction to Network Solutions" ("NSI") that "conclusively established" defendants' misrepresentation of authority. Dkt. #30-1, at 1, 15. Similarly, Exhibit 11 is offered to show that plaintiff had been told by a NSI representative that the ownership of domain names had been changed. Dkt. #30-1, at 6. And her hearsay statement in ¶40 that, based on her review of some undefined set of documents, she has seen no NSI records "where Mr. Dohn expressed concern that [plaintiff] would be a security risk" is offered to prove that "There are no records of such telephone calls." Dkt. #30-1, at 4.[8] Because the documents and testimony are inadmissible hearsay, they should be stricken.

---

[7] Defendants also reserve their objection to the hearsay statements in the February 28, 2006 correspondence from plaintiff to Dohn about the transfer or change of domain registrants purportedly communicated by NSI, to the extent they are offered to prove the truth of those statements. *See* Dkt. #31, Exh. 2; Dkt. # 32-2, Exh. D.

[8] Plaintiff, in testifying at ¶40 of her declaration, relies on an unspecified set of records she received from NSI to conclude that no NSI records exist regarding a specific subject. There is no evidence that she is qualified to opine on what records exist at NSI. The first two sentences of this paragraph of her declaration, and the reference to them on page 4, should therefore be stricken as unauthenticated and inadmissible.
DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

"Unauthenticated documents, once challenged, may not be considered by a court in determining a summary judgment motion." 11 MOORE'S FEDERAL PRACTICE (hereinafter, MOORE'S) §56.14[2][c], at 56-184 (3d ed. 2006). Thus,

> In order to be considered by the court, "documents must be authenticated by and attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." . . . . This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment. . . . We hold that such documents may not be relied upon to defeat a motion for summary judgment.

*Canada v. Blain's Helicopter, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) (citations omitted). A motion to strike, therefore, should be granted "when it challenges documentary evidence that was submitted in support of or in opposition to a summary judgment motion, but which has not been properly authenticated." 11 MOORE'S, *supra*, §56.14[4][a], at 56-198 (also noting that "[i]t is irrelevant that the documents may in the future be properly authenticated at trial through a witness").

Plaintiff's counsel simply offers Exhibits 1 and 11 as an attachment to his declaration. *See* Dkt. #31, ¶¶2, 13. But they are hearsay business records of NSI, requiring that they be authenticated and that a foundation be laid under the explicit requirements of Evid. Rule 803(6). *See* 5 WEINSTEIN'S FEDERAL EVIDENCE [hereinafter "WEINSTEIN"] §803.08[1], at 803-56 (2d ed. 2006) (listing the elements required to admit business records). The foundational elements "must be shown either by testimony of a qualified witness or by a valid certification." *Id.* §803.08[1], at 803-57. "Proffered business records will be excluded if the proponent fails to lay a proper foundation." *Id.* §803[8], at 803-82. The custodian of these NSI records has not authenticated them, and there is no foundation laid for their reliability and admissibility. *See Derrington v. United States*, 302 B.R. 104, 109 n.3 (Bankr. W.D. Wash. 2003) (Lasnik, J.) (citing *Orr v. Bank of America. NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002), for the proposition that "[a] party may not defeat a motion for summary judgment on

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
Case No. CV6 337 TSZ
F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

the basis of inadmissible hearsay evidence"). These documents, the testimony of plaintiff relying on them, and briefing referencing them should be stricken as inadmissible hearsay.

### B. The Undisputed *Material* Facts Render Plaintiff's ACPA Claim Meritless.

Sifting through the factual material before the Court, it is possible to glean the following material facts that are not genuinely disputed:

- Defendants did a substantial amount of work for plaintiff during a period of more than nine months, yet have collected from plaintiff to date, always with difficulty, less than $14,000. Dkt. #23, Dohn Dec., at ¶¶2, 7.

- NSI Account No. 29676023 was set up by Chameleon after plaintiff requested the new domain names on July 27, 2005. Second Dohn Dec., Exh. A; Dkt. #23, Dohn Dec., at ¶3 & Exh. A. Until transfer was made as required by the TRO on March 3, 2006, this account was a Chameleon account holding plaintiff's domain names, not plaintiff's account as she suggests in her brief.

- On August 26, 2005, long before this dispute arose, plaintiff received e-mail notification from NSI of the merger of "User IDs" (Dkt. #23, Dohn Dec., Exh. C), which had the effect of placing plaintiff's "cc-lawfirm.com" domain name from her account into Chameleon account #29676023; the confirming e-mail, which was sent to plaintiff, explained that (1) "any account for which the consolidated user was the Account Holder (Registrant), the new user is now the Account Holder," and (2) stating that the addressee should contact NSI Customer Service "[i]f you believe that someone made this change without your consent."[9]

- In order to facilitate e-mail web hosting services, and with plaintiff's knowledge, consent, and cooperation, on September 22, 2006, Dohn merged the Chameleon NSI account containing her four domain names (#29676023) as a sub-account of Chameleon's master NSI account. Dkt. #23, Dohn Dec., ¶6 & Exh. D. Plaintiff offers no rebuttal to this assertion in her declaration.

- As of February 7, 2006, although plaintiff had promised in writing to make the $3,322.76 payment by February 3rd, Chameleon had not received the promised amount, which included amounts due for registration of plaintiff's three domain names and billings applicable to e-mail hosting services. Dkt. #23, Dohn Dec., ¶¶10, 11; Dkt. #32-1, ¶18.[10]

---

[9] Plaintiff states at ¶33 of her declaration (Dkt. #32-1) that she never would have agreed to make this change if she had understood what this transaction meant, but the fact remains that she received notice of it and she does not dispute that she wanted Chameleon to manage her NSI domain names and e-mail. *See also* Second Dohn Dec., Exh. A.

[10] Plaintiff claims to have mailed the payment on February 6, 2006, but admits that it wasn't received by Chameleon until February 17, 2006. Dkt. #32-1, ¶18. Plaintiff's brief misstates the facts when it says on the top of page 4 that she had paid "domain registration fees, the email hosting fees, and all the other charges invoiced by Defendants prior to January 20, 2006."

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

- On February 7, 2006, having not received the promised payment, Dohn changed the Account Holder name for Chameleon's NSI account holding plaintiff's domain names (#29676023) from "The Christensen Firm" to "Chameleon DATA Corporation—ChrisFirm." He did so, at least in part, to prevent plaintiff from doing an end-run through direct communication with NSI in the event he needed to interrupt services Chameleon was paying for on her behalf. Dkt. #23, Dohn Dec., ¶11 & Exh. G.

- On February 22, 2006, Chameleon issued an invoice (#71) in the amount of $10,041.66 to plaintiff for extranet services, which referenced earlier informal e-mail billings, and which stated that services Chameleon was paying for would be interrupted if the invoice was not paid by March 1, 2006. Dkt. #23, Dohn Dec., ¶13; Dkt. #1-2, Exh. G, at 64-65.

- On February 28th, plaintiff made a partial payment ($625.47) of amounts billed and demanded that Chameleon transfer her domain names to indicate The Christensen Firm as registrant. Having not received full payment of the invoice, Chameleon arranged for interruption of her e-mail service on March 1st. Defendants complied immediately with the March 3rd TRO, which was entered on less than one hour's notice and without an opportunity for defendants to obtain counsel. Dkt. #23, Dohn Dec., ¶¶15, 17, 18.

In discussing "registration" under §1125(d)(1)(A)(ii) of the ACPA, plaintiff glosses over the key undisputed fact: that the name retained a reference to plaintiff by adding "ChrisFirm" after "Chameleon DATA Corporation." On February 7, 2006, when plaintiff has consistently asserted in this lawsuit that defendants "registered" and seized ownership of her domain names, the change to the Account Name in Chameleon's NSI account #29676023 simply noted the agency relationship of Chameleon vis-à-vis plaintiff's law firm. For the reasons set forth on page 17 of defendants' opening brief, that change is not a "registration" under the ACPA.

Plaintiff's argument on page 13 of her brief, that defendants "trafficked in" her domain names as defined in under §1125(d)(1)(E) by "attempting to force Plaintiff to pay for their return," fails for the same reason that her argument on pages 16-17 regarding "bad faith intent to profit" under §1125(d)(1)(A)(i) fails: seeking to collect on outstanding accounts receivable for services previously rendered is not a "transfer for consideration" or otherwise

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

an attempt to obtain commercial or financial "gain" or "profit."[11] Thus, the court in *Ford Motor Co. v. Catalanotte,* 342 F.3d 543, 549 (6th Cir. 2003), cited by plaintiff, found that offering to <u>sell</u> a domain name to its owner constitutes "trafficking" in the domain name. And in another case plaintiff cites, *Coca-Cola Co. v. Purdy,* 382 F.3d 775, 786 (8th Cir. 2004), the court found that an offer to stop using the domain names of a newspaper in exchange for space on the editorial page constituted "valuable consideration." These cases clearly involve seeking transfers for consideration.[12]

In taking steps to obtain payment for amounts owed by plaintiff, defendants were not seeking a transfer for consideration, gain, or profit. The contract between these parties involved the exchange of valuable consideration: Chameleon, the vendor, would perform services, and plaintiff promised to pay for them. But fulfilling the promise to pay does not constitute consideration. *See Johnson v. Tanner,* 59 Wn.2d 606, 609, 369 P.2d 307 (1962) ("An agreement to do that which one is already obliged to do is not sufficient consideration to support a contract . . ."). Plaintiff has not produced a single case suggesting that the ACPA's "trafficking" and "bad faith intent to profit" provisions apply in this situation, and for good reason—no such authority exists.

Even if the Court accepts all of plaintiff's allegations as true for purposes of deciding this Motion for Summary Judgment, including that defendants took control of plaintiff's domains for the express purpose of obtaining leverage for payment of a disputed invoice, that is not cybersquatting under the ACPA as a matter of law. The ACPA was intended to prevent

---

[11] Plaintiff herself links the concepts of "trafficking" and "for profit" in footnote 12, page 16, of her brief. The only factor listed in §1125(d)(1)(B)(i) that is remotely relevant here, subsection (VI), discussed on page 15 of plaintiff's response brief, also indicates that the offer to transfer the domain name must be for "financial gain."

[12] In the opening brief (Dkt. #23-1, at 14 n.7), defendants distinguished on its facts Judge Lasnik's decision in *Flow Control Indus., Inc. v. AMHI, Inc.,* 278 F. Supp. 2d 1193 (W.D. Wash. 2003), cited on page 16 of plaintiff's brief. *Flow Control* did not involve an attempt to collect on an account. Although the Court suggested in dicta that the use of a domain name to obtain "a benefit" such as improving bargaining position in a commercial dispute is actionable under the ACPA, defendants' counsel in that case had asserted that if plaintiff wanted to control the use of the domain name, it should tender an offer to purchase it "for a commercially reasonable sum." *Id.* at 1196, 1200. Thus, defendants were demanding new consideration in exchange for the domain name. They also used the domain name to attract customers to their website. *Id.* at 1200-01.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 11
Case No. CV6 337 TSZ
F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

"the bad faith, abusive registration and use of the distinctive trademarks of others as Internet domain names, with the intent to profit from the goodwill associated with those trademarks." *Shields v. Zuccarini,* 254 F.3d 476, 481 (3d Cir. 2001) (citing S. REP. NO. 106-140 (1999)).

This case is about defendants' suspending of plaintiff's e-mail service; it has nothing to do with trafficking in domain names. Defendants' attempt to collect the $10,000 amount due does not in any way implicate the policy or purpose of the ACPA, and the claim should be dismissed.

## CONCLUSION

This case might well have been resolved long ago if plaintiff, a litigator familiar with the workings of the system, had not withheld relevant damages information required to be disclosed early in the case, and had not pursued meritless claims where there is no evidence that she was actually harmed. Enough is enough. If plaintiff thinks she needs to retrieve her confidential documents (keeping in mind she has never brought forth any evidence that defendants or their agents have <u>ever</u> improperly disclosed any of her confidential information), she should proceed to do so. In the meantime, her cybersquatting claim and state law claims requiring proof of actual damages or injury should be dismissed.

DATED this 13th day of October, 2006.

VANDEBERG JOHNSON & GANDARA

By_____
Daniel Gandara, WSBA #8635
Attorneys for Defendants

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
Case No. CV6 337 TSZ
F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2006, , I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

William F. Cronin
Corr Cronin Michelson Baumgardner & Preece LLP
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154

*Janni J. Santos*
Vandeberg Johnson & Gandara
600 University St., #2424
Seattle, WA 98101-1192
Telephone: 206-386-6904
Fax: 206-464-0484

Email: isantos@vjgseattle.com

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 13
Case No. CV6 337 TSZ

F:\62100-62199\62141-Chameleon\00001\Summ Judgment Mot\MSJ Reply.doc

VANDEBERG JOHNSON & GANDARA
A PARTNERSHIP OF PROFESSIONAL SERVICE CORPORATIONS
ONE UNION SQUARE, SUITE 2424
600 UNIVERSITY STREET
SEATTLE, WASHINGTON 98101-1192
(206) 464-0404 (SEATTLE)
FACSIMILE (206) 464-0484