UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE CHRISTENSEN FIRM,

                Plaintiff,

v.

CHAMELEON DATA CORPORATION, and DEREK S. DOHN,

                Defendants.

No. C06-337Z

ORDER

This matter comes before the Court on a Motion for Partial Summary Judgment, docket no. 23, by Defendants Chameleon DATA Corporation and Derek Dohn (collectively "Chameleon"), and a Motion for Relief from Rule 7(d), docket no. 36, by Plaintiff the Christensen Firm. The Defendant also moves to strike materials contained in the Plaintiff's Opposition. See Reply, docket no. 33. For the reasons stated in this Order, Defendants' Motion for Partial Summary Judgment, docket no. 23, is DENIED, Defendants' motion to strike, docket no. 33, is DENIED, and Plaintiff's Motion for Relief from Rule 7(d), docket no. 36, is GRANTED IN PART and DENIED IN PART.[1]

---

[1] Plaintiff's Motion for Relief from Rule 7(d), docket no. 36, relates to the authentication of several exhibits in the Christensen Firm's Opposition to Summary Judgment and the supplemental declaration of Ms. Jessica Anthony. The disputed exhibits are business records from Network Solutions, the domain registrar who handled the domain name transfers at issue. The exhibits were attached to a declaration of counsel in support of Ms. Christensen's Opposition, and subsequently authenticated in a

ORDER  -1-

Plaintiff "The Christensen Firm" and its founding member, Colleen Christensen, retained Defendant Chameleon in 1995 to provide information technology services, including document management services, email hosting, web services, and "extranet" development. See Compl., docket no. 1, ¶¶ 7, 9; Dohn Decl, docket no. 23, ¶ 2. Plaintiff's predecessor law firm registered the domain name *cc-lawfirm.com* in March of 1999, and the Plaintiff transferred management of the domain to Chameleon in August 2005. See Dohn Decl., docket no. 23, ¶ 4. Three other domain names had previously been registered by Chameleon in the Christensen Firm's name: *christensenfirm.com*, *thechristensenfirm.com*, and *thechristensenfirm.net*. Id. ¶ 3.

In early 2006, the Christensen Firm and Chameleon disagreed over certain charges contained in Chameleon's invoices. Compl., docket no. 1, ¶ 13. Chameleon alleges that the Christensen Firm failed to pay for internet and document management services. Dohn Decl., docket no. 23, ¶¶ 8-10. The Christensen Firm contends it was willing to pay the charges owed, but that it discovered thousands of dollars in duplicate and improper charges. Christensen Decl., docket no. 32, ¶ 5. The Christensen Firm also alleges that Chameleon's hourly rates were higher than expected and agreed to by the parties. Id.

The instant dispute arose when Chameleon transferred ownership of four domain names owned by the Christensen Firm. Id. ¶¶ 15-17, Ex. B at 17 (Dohn Dep. at 94). The Christensen Firm alleges that Chameleon transferred the domains in an attempt to gain "leverage" in the parties' fee dispute. Defendant Derek Dohn, President and CEO of Chameleon, concedes that he changed the name of the account holder on the Christensen Firm's four domain names to "assist in the collection of amounts . . . owed by Ms.

---

late-filed declaration by Ms. Anthony. Ms. Anthony is Network Solutions' Subpoena Compliance Administrator. Defendant Chameleon objects to the exhibits as unauthenticated hearsay and urges that they be stricken. The Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Relief from Rule 7(d), docket no. 36. The Court will consider the Anthony Declaration, docket no. 36, only as it authenticates documents included as part of the Plaintiff's Opposition. The Court will not consider the additional information in the Anthony Declaration, docket no. 36. Chameleon's motion to strike the Network Solutions business records as unauthenticated hearsay, docket no. 33, is DENIED.

ORDER   -2-

Christensen." Dohn Decl., docket no. 23, ¶ 11.[2] When Colleen Christensen sought to "undo" the transfer of the Christensen Firm's domain names, she was unable to do so without Chameleon's permission—which it was unwilling to give. Christensen Decl., docket no. 32, ¶¶ 18, 19. When she contacted Network Solutions, Ms. Christensen was advised that Chameleon was the new registrant for her firm's domain names; only Chameleon could transfer ownership of the domain names back to the Christensen Firm. Id. ¶ 9.

Chameleon advised the Christensen Firm that it would transfer ownership of the four domain names back to the Christensen Firm when the disputed invoice amounts were paid in full. Christensen Decl., docket no. 32, ¶ 19. Chameleon instructed Network Solutions that:

> [a] female may call up calling to claim rights to domain of cc-lawfirm.com. She is not a contact from the company and cx would like no more information given to her.

Moore Decl., docket no. 31, Ex. 1 (Network Solutions call record of March 1, 2006). On March 1, 2006 the Christensen Firm's email services were shut down. Christensen Decl., docket no. 32, ¶ 36. On March 3, 2006 the Christensen Firm filed suit against Chameleon in King County Superior Court. See Compl., docket no. 1. This action was removed to federal court on March 10, 2006. See Notice of Removal, docket no. 1. Before removal, the Superior Court entered a Temporary Restraining Order restoring the Christensen Firm's email services and ordering the transfer of Plaintiff's domain names back to the Christensen Firm. The Christensen Firm's email and domain services were restored by March 3, 2006, following entry of the TRO. See Dohn Decl., docket no. 23, ¶ 18.

## DISCUSSION

Chameleon moves for summary judgment on two issues. First, Chameleon argues that the Christensen Firm's claim for damages under the Anti-cybersquatting Protection Act ("ACPA") fails as a matter of law because Chameleon did not have a "bad faith intent to

---

[2] Mr. Dohn also expressed his fear that Ms. Christensen would take advantage of "security vulnerabilities" with Network Solutions to access Chameleon's financial and proprietary information, as justification for transferring the Christensen Firm's domain names to Chameleon. Dohn Decl., docket no. 23, ¶ 11.

ORDER  -3-

1  profit," and because Chameleon did not register or traffic in the domain names.

2  Chameleon's second argument is that the Christensen Firm's remaining claims fail as a

3  matter of law because Plaintiff failed to disclose damage computations as required by Fed. R.

4  Civ. P. 26(a)(1)(C).

5        In examining this motion for partial summary judgment, the Court must draw all

6  inferences from the admissible evidence in the light most favorable to the non-moving party.

7  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is

8  proper where there is no genuine issue of material fact and the moving party is entitled to

9  judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial

10  burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v.

11  Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing

12  party must show that there is a genuine issue of fact. Matsushita Elec. Indus. Co. v. Zenith

13  Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and

14  probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident &

15  Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary

16  judgment is appropriate without deference to the non-moving party.

17  **1.   Anti-cybersquatting Protection Act**

18        Federal Law provides penalties in a civil action for cybersquatting. See 15 U.S.C.

19  § 1125(d). The Anti-cybersquatting Protection Act, or ACPA, followed a plague of

20  "cybersquatting." The term "cybersquatting" refers to the registration of a famous mark as a

21  domain name with the intent of offering the domain name to the trademark owner for profit.

22  See, e.g., Ford Motor Co. v. Catalanotte, 342 F.3d 543, 549 (6th Cir. 2003) (ACPA intended

23  to remedy "[r]egistering a famous trademark as a domain name and then offering it for sale to

24  the trademark owner."). The quintessential cybersquatter registers a famous mark as a

25  domain name (i.e. ford.com) and then attempts to sell it to the trademark holder (in this

26  example, Ford Motor Company) for profit. The Christensen Firm alleges that Chameleon is

liable under the ACPA as a result of its transfer of the Christensen domain names to Chameleon.  See Compl., docket no. 1, ¶¶ 16-17.

An individual may be held liable under the ACPA for cybersquatting if the person (1) registers, traffics in, or uses a domain name identical or confusingly similar to a distinctive mark, and (2) has a bad faith intent to profit from use of the mark as a domain name.  See 15 U.S.C. § 1125(d).  Chameleon argues that it is not liable under the ACPA because it is not a "cybersquatter," and provides examples of how its own activities are different from those historically labeled as "cybersquatting."  Chameleon also argues that it did not have a bad faith intent to profit, and that it did not register, traffic in, or use Plaintiff's domain names.

### A.  Bad Faith Intent to Profit

Chameleon argues that it is not liable under the ACPA as a "cybersquatter" because it did not have a bad faith intent to profit.  Chameleon concedes, however, that under Plaintiff's version of the facts "Chameleon's motive in making the master account name change on February 7 was to obtain leverage in collecting amounts due and owing by plaintiff to them."  Defs.' Mot., docket no. 23, at 14; see also Dohn Decl., docket no. 23, at 7 (account holder name was changed "to assist [Chameleon] in the collection of amounts indisputably owed by Ms. Christensen.").  In spite of this candid admission, Chameleon urges that it did not have a bad faith intent.  Chameleon argues that it makes money by providing information technology services, not by trading in domain names.  Id.  Defendants argue that they only used the Christensen Firm's domain names to secure payment for services already performed; thus, they had no bad faith intent to profit.  However, the cases cited by Defendants are instructive.  Many reference "an extortionate offer to sell" as the hallmark of a bad faith intent to profit.  See, e.g., Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672, 674 (9th Cir. 2005); see also Sporty's Farm L.L.C. v. Sportsman's Market, Inc., 202 F.3d 489, 493 (2d. Cir. 2000) (cybersquatting defined as "prevent[ing] use of the domain

ORDER  -5-

name by the mark owners, who not infrequently have been willing to pay 'ransom' in order to get 'their names' back."). The Court finds that Chameleon's "extortionate offer" to transfer, which Chameleon effectively concedes, provides a disputed issue of fact as to whether Chameleon had a bad faith intent to profit.[3]

Chameleon attempts to avoid the "cybersquatter" label with a second argument, urging that it had no intent to profit. However, Chameleon admits that it transferred the domain name registrations to gain leverage in ongoing negotiations. Dohn Decl., docket no. 23, at 7. Chameleon's argument that it had no intent to profit defies precedent on the same question: "intent to profit" may be shown by an offer to transfer a domain name to obtain a benefit in commercial dispute negotiations. See, e.g., Flow Control Indus. Inc. v. Amhi, Inc., 278 F. Supp. 2d. 1193, 1200 (W.D. Wash. 2003). The question is whether a defendant seeks a gain in exchange for the transfer of the disputed domain name. See Coca Cola Co. v. Purdy, 382 F.3d 774, 786 (8th Cir. 2004). In this case, Chameleon admittedly sought leverage (i.e., a "gain") by transferring the registrations. Disputed questions of fact prevent summary judgment on the issue of whether Chameleon had a "bad faith intent to profit."

**B.     "Register, Traffic in, or Use"**

Chameleon argues that it is not liable under the ACPA for a second reason: it did not "register, traffic in, or use" the disputed domain names. The Christensen Firm contends that Chameleon "registered" the domain names by transferring the registration to itself. The

---

[3] 15 U.S.C. § 1125(d)(1)(B)(ii) contains various factors which may be considered when evaluating the bad faith intent to profit of a domain name registrant. The factors include (1) the registrant's trademark rights in the domain; (2) legal name rights in the domain; (3) the registrant's prior use of the domain; (4) the registrant's bona fide noncommercial or fair use of the domain; (5) the registrant's improper intent to divert customers and tarnish or disparage the mark of another; (6) the registrant's offer to transfer, sell, or assign; (7) whether the registrant provided misleading contact information when applying for registration; (8) the registrant's acquisition of multiple domain names confusingly similar to the marks of others; and (9) the extent to which the trademark incorporated in the registrant's domain name is distinctive and famous. 15 U.S.C. § 1125(d)(1)(B)(ii). For purposes of this motion, however, a complete analysis of these factors is unnecessary. The Defendant concedes it has no interest in the domain names and that it transferred registration for "leverage" in business negotiations. This is sufficient to create an issue of fact on the question of bad faith intent to profit.

ORDER   -6-

Case 2:06-cv-00337-TSZ   Document 41   Filed 11/01/06   Page 7 of 11


Christensen Firm also contends that Chameleon "trafficked in" the domain names by leveraging its possession of the domain names against its unpaid fees.

The term "register" under § 1125(d)(1)(A)(ii) refers to the action of reserving or registering a domain name with a domain name registrar. See 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION, § 25.78, at 298.3 (4th Ed. 2005). Chameleon argues that it did not "register" the domain name, but merely changed the name of the account holder. It argues that ownership never changed, and that its actions did not constitute "registration" of the domain names in question. However, Chameleon ignores the import of its actions: transferring the domain name is the "registration" of that domain name for purposes of the ACPA. Chameleon's argument that it did not register the domains is without merit. Before Chameleon transferred the domain names, they were registered to (i.e., owned by) the Christensen Firm. After it transferred the domain names, they were registered to (i.e., owned by) Chameleon. The Court concludes as a matter of law that Chameleon did register the disputed domain names.

Chameleon's attempts to parse ownership, registration, and account name are belied by Network Solutions' own records. A Network Solutions call record on March 1, 2006, shows a call from Chameleon Employee "Daren Mowler,"[4] with instructions regarding the disputed domain names:

> [a] female may call up calling to claim rights to domain of cc-lawfirm.com. She is not a contact from the company and cx would like no more information given to her.

Moore Decl., docket no. 31, Ex. 1 (Network Solutions call record of March 1, 2006). Chameleon's argument that it did not register or take ownership of the domain names is undermined by its simultaneous instructions to Network Solutions to deny Ms. Christensen

---

[4] Chameleon employee Darren A. Moeller denied making this call to Network Solutions. See Moore Decl., docket no. 31, ¶ 3.

ORDER -7-

1 her rights in the disputed domain names.[5] Chameleon concedes the import of the ACPA, but
2 fails to understand how it applies to its own actions:

> The ACPA was intended to prevent "the bad faith, abusive registration and use of the distinctive trademarks of others as Internet domain names, with the intent to profit from the goodwill associated with those trademarks."

Defs.' Reply, docket no. 33, at 11-12 (citing Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001)). The Christensen Firm has presented substantial evidence that Defendant Chameleon registered and used the Christensen Firm's domain names to leverage negotiations with Plaintiff. The Christensen Firm has also presented substantial evidence that Chameleon intended to profit from the goodwill that the Christensen Firm associated with its marks, by using that goodwill as leverage.

The Court concludes that as a matter of law Chameleon's transfer of the Christensen Firm's domain names to itself constitutes the "registration" of those domain names under the Anti-cybersquatting Protection Act. The Court DENIES Chameleon's Motion for Summary Judgment on Plaintiff's Claims under the ACPA.

**2.    Damages**

Chameleon urges the Court to find that Plaintiff's remaining claims should be dismissed because the Christensen Firm failed to provide a computation of damages in its initial disclosures. See Fed. R. Civ. P. 26(a)(1). Chameleon argues that the Christensen Firm failed to disclose its damages computation for its non-ACPA claims. In addition to its claim under the ACPA, the Christensen Firm asserts claims for violation of Washington's Consumer Protection Act ("CPA"), conversion, tortious interference with contractual rights, and breach of fiduciary duties. See Compl., docket no. 1, ¶¶ 28-40. The Christensen Firm

---

[5] Chameleon's argument in Reply that it "retained a reference to plaintiff by adding 'ChrisFirm' after "Chameleon DATA Corporation," and thereby did not "register" the domain name, is a technical (and unsuccessful) attempt to avoid the plain meaning of "register," as the term is used in the ACPA and understood by the Courts. Chameleon took control of the Christensen Firm's domain names to the exclusion of the Christensen Firm and cannot now claim that it did not "register" those domain names in its own name.

ORDER  -8-

argues that Chameleon improperly seeks a discovery sanction instead of summary judgment. Plaintiff argues that it provided damages information in discovery, and that if Chameleon wanted more information it could have moved to compel under Fed. R. Civ. P. 37(c)(1). See Gandara Decl., docket no. 23, Ex. B (Plaintiff's Initial Disclosures).

Federal courts have been reluctant to exclude evidence at summary judgment when a party has slept on their rights in discovery. See, e.g., Cash v. State Farm Fire & Cas. Co., 125 F. Supp. 2d 474, 477 (M.D. Ala. 2000) ("[T]he moving party cannot sleep on its rights; it may not wait until the summary judgment stage to object to the use of materials that it has made no prior reasonable effort to obtain."); see also Compana, LLC v. Aetna, Inc., Civil No. 05-277RSL (W.D. Wash. May 12, 2006). In Compana, the court denied a motion to exclude where a party failed to propound discovery requests or move to compel production:

> [Defendant] never propounded any written discovery requests or filed a timely motion to compel. Instead, it now seeks the most severe sanction, exclusion of all evidence, without pursuing other methods for obtaining the documents.

Id. at 2. In this case, such an evidentiary exclusion is not warranted. Plaintiff supplemented its initial disclosures to claim damages exceeding $75,000. See Christensen Decl., docket no. 32, Ex. B. The supplement followed a reasonably detailed disclosure in Plaintiff's Initial Disclosures. While the Supplement was served *after* Chameleon filed its motion for summary judgment, it was filed before the close of discovery. Chameleon never sought to compel answers to discovery and its motion for summary judgment on Rule 26 grounds is therefore DENIED.[6] Plaintiff's motion to strike the supplemental damages disclosure, docket no. 33, is DENIED.

---

[6] Plaintiff correctly notes that under the Consumer Protection Act, "no monetary damages need be proven . . . injury without monetary damages will suffice." Nordstrom, Inc. v. Tampourlos, 107 Wash. 2d 735, 740 (1987).

ORDER -9-

Genuine issues of material fact also preclude summary judgment on the substantive question of damages for Plaintiff's remaining claims.[7] The Christensen Firm alleges damage to its business as a result of Chameleon's domain name transfer, and the Christensen Firm has provided information relating to damages. <u>See</u> Christensen Decl., docket no. 32, Ex. A (Supp. Damages Disclosure). The Christensen Firm's damages claims have always turned on (1) lost earnings; (2) statutory damages under the ACPA; (3) statutory damages under the CPA; and (4) attorneys' fees and costs. <u>See</u> Gandara Decl., docket no. 23, Ex. A (Plaintiff's Initial Disclosures). Chameleon's motion for partial summary judgment on damages for the Christensen Firm's remaining claims is DENIED.

## CONCLUSION

Defendant Chameleon's Motion for Partial Summary Judgment, docket no. 23, is DENIED. Material questions of fact preclude summary judgment on the question of whether Chameleon registered the disputed domain names with a bad faith intent to profit; material questions of fact also preclude summary judgment on the issue of damages. The Court concludes as a matter of law that the transfer of the disputed domain names to Chameleon constituted the "registration" of those domain names within the meaning of the Anti-cybersquatting Protection Act. The Court DENIES Chameleon's motion to strike the supplemental damages disclosures, docket no. 33. The Christensen Firm's Motion for Relief from Rule 7(d), docket no. 36, is GRANTED IN PART and DENIED IN PART as set forth in this Order; Chameleon's motion to strike the Network Solutions business records as unauthenticated hearsay, docket no. 33, is DENIED.

---

[7] Chameleon advances a new damages-related argument in Reply: under Washington law Plaintiff's claimed damages are not compensable. <u>See</u> Reply, docket no. 33, at 5-6. This argument is substantially different from Chameleon's opening brief, which asserted that Plaintiff's claims should be dismissed for failure to comply with Rule 26. <u>See</u> Defs.' Mot, docket no. 23, at 18-20. The Court declines to reach this new argument, because it was raised for the first time in Reply.

ORDER  -10-

IT IS SO ORDERED.

DATED this 1st day of November, 2006.

_____
Thomas S. Zilly
United States District Judge